UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-22193-CIV-HOEVELER

GEORGE STAMOS,

     Plaintiff,


SCOTT BROWN,

     Defendant.

_____/

## ORDER GRANTING SUMMARY JUDGMENT AS TO COUNT II, AND DENYING SUMMARY JUDGMENT AS TO ALL OTHER COUNTS

     This cause is before the Court on Defendant's motion for summary judgment. For the reasons that follow, the motion is GRANTED as to Count II, and DENIED as to all other Counts (Counts I, IV, and V).[1]

### Background

     Plaintiff George Stamos filed this case against Defendant Scott Brown, a Miami-Dade police officer, alleging violations of Stamos' rights under the Fourth and Fourteenth Amendments of the United States Constitution. Plaintiff also seeks damages under Florida common law relating to intentional infliction of emotional distress, malicious prosecution, false arrest and detention. The context for each of these claims is the August 27, 2005, arrest of Stamos for disorderly conduct - the related charges of which were dismissed on March 14, 2006. Defendant now seeks summary judgment on the federal claims on the basis of qualified immunity, and on the state common law claims on the basis of immunity under Fla. Stat. § 768.28(9)(a). Defendant argues that: (1) the existence of probable cause

---

     [1]The Court previously dismissed Count III (a claim of negligence).

to arrest Stamos is a complete bar to the false imprisonment and malicious prosecution charges; (2) since no criminal proceeding was instituted by Defendant, he cannot be liable for malicious prosecution; and (3) Defendant's actions did not comprise the "outrageousness" necessary to support a claim for intentional or reckless infliction of emotional distress, and no such distress is evidenced in the record.

Plaintiff argues that Defendant's responses to pending discovery requests are necessary before Plaintiff can prepare an adequate response to the pending motion for summary judgment. Defendant disagrees, and notes that qualified immunity is to be addressed at an early stage of litigation so as to avoid unnecessary discovery burdens whenever possible.

## I. Qualified Immunity

Qualified immunity shields government officials performing discretionary functions from civil litigation and damage liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997). In order to be protected by qualified immunity, a defendant must first show that he was engaged in a discretionary function when the alleged violation occurred. An officer acts within the scope of his discretionary authority when his conduct is undertaken pursuant to the performance of his official duties. Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004). Once the defendant has made such a showing, the burden then shifts to the plaintiff to present competent evidence showing why the defense should not be applied. Id. Qualified immunity must be granted to a government official unless the plaintiff shows that the facts viewed in the light most favorable to the plaintiff establish a constitutional violation by the official, and that the unlawfulness of the conduct was clearly established at the time of the

2

incident. Saucier v. Katz, 533 U.S. 194, 201 (2001).

In this case, there is no evidence to rebut Defendant's claim that he was acting within the scope of his official duties at the time of the arrest. While Plaintiff alleges in his Complaint that Defendant was outside his jurisdiction at the time of the arrest, implying that Brown lacked authority to perform police duties, Plaintiff has presented no evidence supporting this allegation. Indeed, Plaintiff states in his deposition that when Defendant arrived at the scene he appeared to be "tak[ing] charge of an investigation into illegal activity," (Deposition of Stamos, p. 32), which also suggests that the conduct was within the scope of a police officer's duties.

The Court next examines whether Plaintiff has satisfied his burden under Saucier. Plaintiff complains that Defendant Brown violated his Fourth and Fourteenth Amendment rights by falsely arresting him for violating Fla. Stat. § 877.03. Specifically, Plaintiff argues that he had a right to be free from unreasonable search and seizure, including arrest. Whether an arrest of a person is reasonable depends on a finding of probable cause. Kingsland, 382 F.3d at 1226. Probable cause exists when the facts within the collective knowledge of law enforcement officials are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed. Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997) (citing United States v. Jimenez, 780 F.2d 975, 978 (11th Cir.1986)). As stated earlier, however, Saucier requires showing not only that a violation occurred, but also that the unlawfulness of the conduct was clearly established at the time of the incident. As such, in the context of a false arrest claim, an officer will be shielded from liability even if he lacked actual probable cause for the arrest, as long as he establishes that arguable probable cause for the arrest existed.  Davis v. Williams, 451 F.3d 759, 761 (11th Cir. 2006). Arguable probable cause is viewed objectively, and exists

3

where "reasonable officers in the same circumstances and possessing the same knowledge as the [Defendant] could have believed that probable cause existed to arrest Plaintiff." Kingsland, 382 F.3d at 1232 (quoting Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990)). Defendant Brown alleges that there was arguable probable cause for arresting Stamos for disorderly conduct and also for obstruction of justice - for which Stamos was not charged.

The offense of disorderly conduct, according to Fla. Stat. § 877.03, is a misdemeanor comprising the commission of acts that "corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or . . . conduct that constitutes breach of the peace or disorderly conduct . . . " Although speech alone can constitute action sufficient to support a charge of disorderly conduct, "[t]o avoid First Amendment concerns in cases involving speech, the Florida Supreme Court has strictly limited the law to apply in such cases only where the speech, by its very utterance . . . inflicts injury or tends to incite an immediate breach of the peace . . ." Gold, 121 F.3d at 1445. Based on this limitation, the Florida Supreme Court has reversed convictions for disorderly conduct where a defendant merely directed profane language at police officers in the presence of others, see Morris v. State 335 So. 2d 1, 2 (Fla. 1976), and where defendants made threatening comments to, and voiced "intemperate expletives" near, police officers, see Gonzales v. City of Belle Glade, 287 So. 2d 669, 670-71 (Fla. 1973). The mere failure to follow an officer's instructions is also insufficient to establish an officer's arguable probable cause in support of qualified immunity. Davis, 451 F.3d at 763. In Davis, the Eleventh Circuit found that defendant police officers lacked arguable probable cause when they arrested plaintiff Donovan Davis for obstruction of justice and disorderly conduct following an incident where Davis refused

4

to follow the officers' multiple orders. Id. at 767. Davis, upon noticing flashing police lights outside his home, walked down his driveway to approach two officers who, unbeknownst to Davis, were conducting a traffic stop. Id. at 763. The officers told Davis multiple times to leave the scene. Id. The first time, Davis responded to the officers "I live here." Id. The second time, Davis asked "what's wrong," but nonetheless turned away and walked towards his house. Id. Then, noticing that the officers' car was blocking the street and forcing oncoming cars onto a part of his property that ended in an unlit lake, Davis asked the officers if he could direct traffic to avoid possible accidents. Id. Davis was told "[l]eave now or I'll arrest you." Id. Davis asked why he would be arrested, and was again told to leave. Id. Turning towards his house, Davis then asked if he could speak with the officers' superior. Id. The officers told Davis that if he continued to say anything, he would be arrested. Id. At this point Davis turned his back and started walking home, but was arrested before he reached his house. Id.

The facts in the present case are similar to the facts recited above, from the decision in Davis. Viewing the facts in the light most favorable to the Plaintiff, the Court cannot find that Plaintiff was "corrupt[ing] the public morals," "outrag[ing] the sense of public decency," or "affect[ing] the peace and quiet of persons who may [have] witness[ed] [him]." Like the plaintiff in Davis, Stamos did not initially listen to the defendant's orders to back away, but did begin to step back after subsequent orders. Furthermore, Stamos states that he never assumed a threatening stance, and denies using profanity. Unlike cases where a plaintiff's alleged disorderly conduct stemmed from active protesting or attempts to prevent police action, in the present case Plaintiff appears to have approached Defendant Brown only to inquire about a police report. While Stamos does admit to raising his voice to a level indicating the firmness of his request, there is no evidence suggesting

5

that Stamos' words or conduct incited an immediate breach of the peace.  The Court finds
· that although Stamos approached Defendant Brown on several occasions, Stamos' actions
and the circumstances of the arrest did not provide probable cause, nor arguable probable
cause, for arresting Stamos for disorderly conduct.  Although Stamos was arrested prior
to publication of the decision of the Court of Appeals in Davis, the Court notes that several
Florida decisions issued prior to the time of Stamos' arrest had disproved of arrests for
disorderly conduct under circumstances materially similar to those present in this case.

The offense establishing probable cause for an arrest (as relied on in support of a
qualified immunity defense) need not be the actual grounds upon which a disputed arrest
was made.  See Devenpeck v. Alford, 543 U.S. 146, 153 (2004).  Defendant claims that he
had probable cause to arrest Stamos for obstruction of justice, and that Defendant is
therefore entitled to qualified immunity on these grounds.  The offense of obstruction of
justice, according to Fla. Stat. § 843.02, is a misdemeanor comprising "resist[ing],
obstruct[ing], or oppos[ing] any officer . . . in the lawful execution of any legal duty . . ." To
support a conviction pursuant to § 843.02, the state must prove that:  "(1) the officer was
engaged in the lawful execution of a legal duty; and (2) the action by the defendant
constituted obstruction or resistance of that lawful duty." Slydell v. State, 792 So.2d 667,
671 (Fla 4th Dist. Ct. App. 2001). As noted by the Eleventh Circuit, "Florida courts have
generally held, with very limited exceptions, that physical conduct must accompany
offensive words to support a conviction under § 843.02." See Davis, 451 F.3d at 765[2];
Francis v. State, 736 So.2d 97, 99 (Fla. 4th Dist. Ct. App. 1999) (exceptions include an

---

[2]Again, although Stamos was arrested prior to publication of the decision of the
Eleventh Circuit in Davis, the Court notes that several Florida decisions issued prior to
the time of Stamos' arrest had disproved of arrests for obstruction of justice under
circumstances materially similar to those present in this case.

individual's conduct while an officer is serving process, legally detaining a person, or asking
· for assistance). In contrast to Davis, the facts of which are discussed in the analysis,
above, relating to disorderly conduct, when an unknown bystander uses profanity at an
officer and specifically interferes with the officer's attempt to arrest a suspect, the officer
may have arguable probable cause to arrest the bystander for obstruction of justice.
Saballos v. Banilla, 2006 U.S. Dist. LEXIS 95093, *16 (S.D. Fla. 2006). In Saballos, a court
found that arguable probable cause existed for the arrest of a person who - with a group
of unknown people - approached an officer while the officer was trying to arrest a suspect.
Id. The court stated that the plaintiff's use of profanity, as well as the fact that there were
only two officers present to handle a tense situation at the time, demanded a "quick
judgment call . . . to diffuse the situation." Id.

      Here, the Court finds that Defendant did not have arguable probable cause for
arresting Stamos for obstruction of justice. Like the plaintiff in Davis, Stamos did not initially
listen to the Defendant's orders to back away, but did begin to step back after subsequent
orders. In contrast to the plaintiff in Saballos, Stamos denies using profanity or other
offensive words. The facts of the present case also differ from those recited in the Saballos
decision in that Defendant Brown has made no allegation that the presence of only a small
number of officers demanded a "quick judgment call." Rather, when Defendant Brown
arrived on the scene there were multiple officers present, an initial investigation had
already been conducted, and Stamos had been speaking "for some time" with two of the
officers.    Deposition of Stamos, p. 79.    Unlike the confrontation in Saballos, the
confrontation between Defendant Brown and Plaintiff Stamos appears not to have occurred
during an attempted arrest, but rather after Defendant conducted his own investigation of
the scene and returned to the home of a nearby resident, Dwayne Danford. As such, the

7

Court finds that the facts of the present case are far more analogous to those in Davis and, accordingly, the Court concludes that Defendant Brown did not have probable cause, nor arguable probable cause, for an arrest based on obstruction of justice.

Having determined that Defendant lacked arguable probable cause for either of the alleged bases for arrest, and noting that the unlawfulness of such arrests was clearly established at the time of Defendant's arrest of Stamos, the Court finds that Plaintiff has met the requirements of Saucier, and Defendant's motion for summary judgment based on qualified immunity as to the § 1983 claims is denied.

## II. Florida Statutory Immunity

Under § 768.28(9)(a) of the Florida Statutes, a police officer may not be held personally liable in tort or named as a party defendant in any action for any damage suffered from an act committed in the scope of his employment unless the officer "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." This "bad faith" exception has been equated with an actual malice standard. See Parker v. Fla. Bd. of Regents, 724 So. 2d 163, 167 (Fla. 1st Dist. Ct. App. 1998). Defendant argues that there is no evidence of malice before the Court and, as such, Defendant is entitled to Florida statutory immunity; the Court disagrees.

According to Stamos' account of the events leading up to his arrest, Stamos approached Defendant Brown only in connection with Stamos' request for a police report. From the moment Stamos first made this request, Defendant Brown repeatedly used profane language towards Stamos and then Defendant proceeded to push Stamos. Deposition of Stamos, p. 86 (Brown reportedly stated "I'm not here to talk to you. Get your ass over there."); p. 91 ("I don't give a shit who you are.  Get over there."); p. 94 ("Get over there.  I don't give an F who you are."); p. 101 (Brown allegedly "pushed [Stamos] with my

8

hands behind my back ..."). While the Court does not hold that this conduct – i.e., the Defendant police officer's repeated use of profanity – in and of itself constitutes "malicious purpose," Stamos' deposition testimony does raise a significant issue as to whether Defendant acted with malice or with bad faith. As the Court must construe the facts in the light most favorable to Plaintiff, the Court is unable to find that there is an absence of malice and an absence of bad faith in this record and, as such, Defendant's motion for summary judgment on the basis of § 768.28(9)(a) immunity is denied.

### III. False Imprisonment

False imprisonment is the "unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and deprivation of his liberty." Johnson v. Weiner, 19 So. 2d 699, 700 (Fla. 1944). Defendant argues that the existence of probable cause to detain someone eliminates the claim for false imprisonment as a matter of law. See Grix v. Fla. Fish & Wildlife Conservation Comm'n, 821 So. 2d 315, 316-317 (Fla. 4th DCA 2002). As discussed above, the facts viewed in the light most favorable to Plaintiff suggest that probable cause for his arrest was lacking and, as such, Defendant's motion for summary judgment on this claim is denied.

### IV. Malicious Prosecution

A claim for malicious prosecution requires the plaintiff to prove the following: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damages resulting to plaintiff. Burns v. GCC Beverages, Inc., 502 So. 2d 1217, 1218 (Fla. 1986).

Defendant argues that Plaintiff has produced no evidence that Defendant was

9

involved in Plaintiff's criminal prosecution or that Defendant controlled the prosecution in
any way. Defendant was involved in Stamos' criminal prosecution in that it was Brown's
arrest of Stamos that led to the prosecution in the first place. There is no requirement that
a defendant "control" the prosecution to be liable for malicious prosecution, and far more
attenuated causal relationships have been held sufficient to satisfy this criteria. See, e.g.,
Lashley v. Bowman, 561 So. 2d 406, 407 (Fla. 5th Dist. Ct. App. 1990) (holding that a
restaurant owner without probable cause to believe that a patron had obtained food with
intent to defraud her by failing to pay could be found liable for malicious prosecution for her
call to the police and the patron's subsequent arrest); Kingsland, 382 F.3d at 1234-35
(denying defendant police officers' motion for summary judgment on a malicious
prosecution claim where plaintiff alleged that due to officers' improper actions, prosecutor
was presented with false and misleading information).   Defendant also argues that there
is no evidence to support the required element of malice. As stated above in the Court's
discussion as to state statutory immunity, Plaintiff's testimony indicates the use of profanity
by Defendant Brown and, taking the evidence in the light most favorable to Plaintiff, the
Court cannot agree with Defendant that malice was not present; thus, Defendant's motion
for summary judgment as to this claim is denied.

## V. Intentional Infliction of Emotional Distress

To satisfy the requirements of a claim for intentional (or reckless) infliction of
emotional distress, the behavior must be "so outrageous in character and so extreme in
degree as to go beyond all possible bounds of decency, to be regarded as atrocious and
utterly intolerable." Metropolitan Life v. McCarson, 467 So. 2d 277, 278-279 (Fla. 1985)
(adopting the Restatement (Second) of Torts § 46 (1965)). The issue of whether
allegations rise to the level of outrageous conduct is a question of law to be determined by

10

the Court. Ponton v. Scarfone, 468 So. 2d 1009, 1011 (Fla. 2d Dist. Ct. App. 1985); Baker .v. Florida Nat'l Bank, 559 So.2d 284, 287 (Fla. 4th Dist. Ct. App.1990). Often, conduct which is independently tortuous, or even criminal, will not cross the high bar set for outrageousness. Id. at 278; see also Artubel v. Colonial Bank Group, 2008 U. S. Dist. LEXIS 60781 (M.D. Fla. Aug, 8 2008) (false statements by a police detective and bank employee resulting in plaintiff's wrongful incarceration and prosecution were not outrageous conduct). While the Court notes that Plaintiff's request for discovery was not yet responded to, Plaintiff's own account of the events leading up to the arrest is available in Plaintiff's deposition. The Court finds that this account - Plaintiff's own testimony taken in the light most favorable to Plaintiff - does not meet the extremely high standard for outrageousness needed to satisfy a claim for intentional or reckless infliction of emotional distress and, as such, Defendant's motion for summary judgment on the claim is granted.

In summary, Defendant's motion for summary judgment is GRANTED, in part, as to the intentional or reckless infliction of emotional distress claim, and DENIED as to the § 1983, false imprisonment, and malicious prosecution claims. In light of the Court's ruling on the motion for summary judgment, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion to Stay Discovery is DENIED, as moot. The parties are directed to jointly propose a new date for trial and a discovery schedule, and shall do so no later than August 3, 2010.

DONE AND ORDERED in Miami, Florida, July 28 2010.

WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT JUDGE

copies to counsel of record

11